# CHARLESTON.

STATE v. DUDLEY MILAM, ROWLAND LAND COMPANY et al.

(No. 4513)

Submitted April 1, 1924. Decided October 13, 1925.

PUBLIC LANDS—*Claimant Admitting Forfeiture of Title May Not Redeem in Proceeding Under Code, Chapter 105, When Title Has Been Transferred to Another Claimant Under Section 3, Article XIII Constitution.*

A claimant of land, admitting forfeiture of his title, will not be permitted to redeem in a proceeding under Chapter 105 Code, where the forfeited title has been transferred to another claimant under Section 3, Article XIII of the State Constitution.

HATCHER, JUDGE, absent.

Error to Circuit Court, Raleigh County.

Action by the State of West Virginia against The Dudley Milam, Rowland Land Company et al. Decree for plaintiff, and defendant brings error.

*Affirmed.*

J. E. Summerfield and A. A. Lilly, for plaintiff in error.
P. H. M. Patterson, L. L. Scherer, Austin File, W. W. Goldsmith, Brown, Jackson & Knight and Harold A. Ritz, for defendant in error.

LITZ, JUDGE:

This suit was instituted under Chapter 105, Code, presumably for the purpose of having sold for the benefit of the school fund two adjoining tracts of land in Raleigh county, containing 144.18 acres and 5.81 acres, alleged to have been forfeited for non-entry on the land books from 1870 to 1917. In reality it involves a controversy of title between the defendants, Dudley Milam and Rowland Land Company, a corporation.

The bill filed at April rules, 1918, alleges in effect that by continuous, adversary holding, under claim of ownership, the defendants Dudley Milam and Sena C. Milam, his wife, acquired title to the land proceeded against; but that because of their failure to have the property entered for taxation the title so acquired by them has become forfeited to the State.

The bill alleges further that the defendant, Rowland Land Company, asserts title to said land as part of a 20,042 acre tract conveyed to it by deed from defendants S. C. Rowland and J. Roman Way, dated September 19, 1903.

The answer of Dudley Milam and Sena C. Milam denies that Rowland Land Company, S. C. Rowland or J. Roman Way is interested in the land or has paid taxes thereon; avers that by adversary possession under claim of ownership Dudley Milam has acquired fee simple title thereto; admits the alleged forfeiture; and prays that said Dudley Milam be permitted to redeem from the State.

The answer of Rowland Land Company, S. C. Rowland and J. Roman Way denies the alleged possession and ownership of Dudley Milam or Sena C. Milam, and avers that the defendant Rowland Land Company is the owner in fee simple of said land under the deed to it from S. C. Rowland and J. Roman Way, bearing date September 10, 1903, conveying 20,042 acres of land (including the disputed territory), subject to the reservation by S. C. Rowland and J. Roman Way of the timber thereon ten inches and over in diameter measured four feet from the ground; that title to said 20,042 acres, emanating from the Commonwealth of Virginia, was conveyed to S. C. Rowland and J. Roman Way by deed from John R. Bond and others dated October 25, 1899; that the Rowland Land Company, S. C. Rowland and J. Roman Way and their predecessors in title have had and held open, notorious, continuous, exclusive and adverse possession of the 20,042 acre tract more than twenty years next preceding the institution of this suit; that they have paid all taxes charged or chargeable thereon from 1865 to 1917; and, by virtue of Section 3 of Article XIII of the State Constitution, are invested with all other titles and claims of title forfeited to the State.

*Claim of Dudley Milam:*

According to the evidence adduced in support of this claim, about the year 1830 Pemberton Cook, the father-in-law of Dudley Milam, marked out the boundaries and took possession of the land in question by actual occupancy, which he maintained until about 1868, when Milam and Leonard Webb, by parol purchase, obtained the claim and possession of Cook. Later acquiring the title of Webb, Milam has continuously occupied the land under enclosure of the entire tract since 1890.

By deed dated July 30, 1903, Dudley Milam and Sena C. Milam conveyed the land to their son-in-law, Henry A. McGinnis, who thereafter by deed of March 31, 1905, reconveyed the same to Dudley Milam. These two deeds constitute the only written evidence of title in Dudley Milam. No taxes were ever assessed to or paid by him or any one under whom he claims.

*Title Asserted by Rowland Land Company:*

The disputed boundary is part of 20,042 acres of land conveyed by Robert C. Winthrop and others to John R. Bond and others, by deed dated November 1, 1886, and thereafter conveyed by John R. Bond and others to S. C. Rowland ,and J. Roman Way, and by them to Rowland Land Company, as alleged. The 20,042 acre tract is also part of two conflicting grants from the Commonwealth of Virginia, one dated January 9, 1796, to Thomas Rutter and Reuben Etting, for 174,673 acres, the other February 17, 1796, to DeWitt Clinton for 130,000 acres; title having passed by regular line of conveyances from those holding under said grants to the grantors in the deed, dated November 1, 1886, from Robert C. Winthrop and others to John R. Bond and others. It is shown by the testimony for Rowland Land Company, S. C. Rowland and J. Roman Way that they and their predecessors in title have held and maintained continuous, actual possession of the 20,042 acre tract, outside of the land in dispute, since 1888, and have, during the whole of said period, paid the

taxes on an acreage equal to, or in excess of that contained in said 20,042 acre tract.

In view of this situation, the Rowland Land Company contends that whatever title Dudley Milam may have acquired by adverse possession has become forfeited to the State (as he admits), and vested in said company by virtue of its possession and payment of taxes, under the first provision of Section 3, Article XIII of the Constitution, which transfers forfeited title to any person (other than those for whose default the same may have been forfeited, or returned delinquent, their heirs or devisees), who shall have had claim to, and actual, continuous possession of, the land *under color of title* for five successive years and paid all State taxes charged or chargeable thereon for said period.

The Land Company insists further that it is in a position to take the benefit of the admitted forfeiture under the second provision of Section 3, Article XIII of the Constitution, by which the State's title is transferred to any person (other than those for whose default it may have been forfeited or delinquent, their heirs or devisees) for so much of the land as such person shall have *title or claim to, regularly derived, mediately or immediately, from or under a grant from the Commonwealth of Virginia or this State,* not forfeited, which but for the title forfeited, would be valid, and who, or those under whom he claims, has, or shall have, paid all State taxes charged or chargeable thereon for five successive years.

Milam, on the other hand, asserts: (1) that by continuing to occupy the land in question, he has prevented the Rowland Land Company from taking title under the first Constitutional provision; and (2) that title, originating in either the Rutter and Etting or DeWitt Clinton grants, has become forfeited to the State, by reason of which the land company is precluded from taking the benefit of the forfeited title under the second Constitutional provision.

Assuming, without deciding, that the Land Company is not in position to take title under the first, there can be no doubt of its right to do so under the second, constitutional provision, for the reason that forfeiture under neither the Rutter and Etting nor DeWitt Clinton grants has been shown, the fol-

lowing being the only evidence offered to establish the fact:

(1)    Alleged forfeiture of 41,026½ acres of the Rutter and Etting grant.

Prior to 1868 Francis and John A. Granger, through whom the Rowland Land Company deraigns title, had acquired both the Rutter and Etting and DeWitt Clinton titles to a large boundary of land including the disputed territory. It is asserted by Dudley Milam that 41,026½ acres of the land so owned by the Grangers was returned delinquent for the year 1868, thereafter sold to the State, and never redeemd. The only evidence of this claim is the certificate of the Auditor, as follows:

> "State of West Virginia,
> Auditor's Office, City of Charleston, to-wit:
> "I, J. S. Darst, Auditor of the State of West Virginia, do hereby certify that a tract of 41,026½ acres of land, lying in Raleigh county, was delinquent for the non-payment of taxes thereon in the year 1868 in the name of F. and J. A. Granger, and was sold by the Sheriff of said County of Raleigh at a sale of delinquent lands to the State of West Virginia for such delinquency, and not being redeemed was certified by the Auditor of the State to the Commissioner of School Lands of Raleigh County, as forfeited to the State.
> "Given under my hand and official seal this 6th day of May, 1913.
>
> "J. S. Darst, Auditor."

This certificate is relied on, under Section 5, Chapter 130, Code, as *prima facie* evidence of the fact and time of the return of the alleged delinquency and sale thereunder. It is fatally defective in failing to show either the date of the sale or the time when the delinquency was returned. Moreover, there appears from an order entered by the Board of Supervisors of Raleigh County, November 16, 1868, that upon the recommendation and approval of the prosecuting attorney 41,026½ acres was dropped from the land books as an erroneous charge against Francis and J. A. Granger. It is also shown that the amount of lands remaining assessed to Francis

and John A. Granger, after this reduction, was approximately the correct acreage owned by them in Raleigh County at that time.

(2)   Alleged forfeiture of 43,450 acres under DeWitt Clinton title.

It is claimed that this acreage disappeared from the land books in the year 1850, and has become forfeited for non-entry thereafter.  It is sufficient answer to this contention that the Grangers, having acquired both the Rutter and Etting and DeWitt Clinton titles, covering the same land, were assessed therewith according to its acreage.  They were not required to pay taxes under both titles.

(3)   Alleged forfeiture of 85,147 acres, under DeWitt Clinton title.

. This acreage was returned delinquent for 1868 but redeemed before sale by John W. McCreery (now deceased), agent and attorney for the Grangers.  Counsel for Dudley Milam questions the validity of the redemption on the ground that there is not sufficient affirmative proof of the fact that McCreery was at the time acting as the agent for his clients. This is a frivolous contention, as he is presumed, under the law, to have acted in the discharge of his duty; and would not be permitted, if living, to say otherwise.

(4)   Alleged forfeiture of 42,034 acres under DeWitt Clinton title.

The above acreage, theretofore assessed to Francis and John A. Granger, was dropped from the land books in 1874, and again charged to them in 1883, after its redemption in a school land suit.  It is contended on behalf of Dudley Milam that the acreage thus omitted became forfeited and that the redemption in the school land proceeding was invalid, for the reason that the land was not sufficiently described in the bill and proceedings.  It is not denied, however, that the State received the taxes in arrears on account of the omission of the acreage in question, and that an order was entered releasing the land from the alleged forfeiture.  In such case the State is estopped to deny the redemption, no matter how defective the proceeding.  *Webb* v. *Ritter,* 60 W. Va. 193; *Allen* v. *LaFollette,* 94 W. Va. 700, 711.

The decree of the circuit court, dismissing the bill and denying the right of redemption to Dudley Milam, is

*Affirmed.*